UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRYAN C.,

                    Plaintiff,

          v.                                                    **DECISION AND ORDER**

                                                                19-CV-6932S

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

1.       Plaintiff Bryan C.[1] brings this action pursuant to the Social Security Act ("the

Act"), seeking review of the final decision of the Commissioner of Social Security that

denied his applications for supplemental security income and disability insurance benefits

under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this

action under 42 U.S.C. § 405(g).

2.       Plaintiff protectively filed his applications with the Social Security

Administration on February 23, 2017, for both applications.  Plaintiff alleged disability

beginning October 2, 2013, due to mood disorder; major depressive disorder; generalized

anxiety disorder; calcaneal spurs, bilateral feet; plantar fasciitis; obstructive sleep apnea;

and obesity.  Plaintiff's applications were denied, and he thereafter requested a hearing

before an administrative law judge ("ALJ").

3.       On October 10, 2018, ALJ Melissa Hammock held a video hearing at which

Plaintiff—represented by counsel—and Vocational Expert Dana Lessne appeared and

_____

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with
guidance from the Committee on Court Administration and Case Management of the Judicial Conference
of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

testified.  (R.[2] at 38-93, 20.)  At the time of the hearing, Plaintiff was 41 years old with a high school education (R. at 31).  Plaintiff had prior work experience as a furniture mover (very heavy exertion), stock clerk (heavy exertion), groundskeeper (medium exertion), flagger (light exertion), hand packager (medium), and peddler (medium) (R. at 31).  The ALJ later found that Plaintiff could not perform this past relevant work (R. at 30-31).

4.      The ALJ considered the case *de novo* and, on November 28, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 11.)  Plaintiff filed a response on August 19, 2020 (Docket No. 12), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's November 28, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.       "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.       The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering his physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460,

103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 2, 2013, although he did engage in substantial gainful activity from November 16, 2016, through December 31, 2016, the ALJ considered Plaintiff's functioning throughout the alleged period.  (R. at 22.)  At step two, the ALJ found that Plaintiff has the following severe impairment: mood disorder; major depressive disorder; generalized anxiety disorder; calcaneal spurs, bilateral feet; plantar fasciitis; obstructive sleep apnea; and obesity.  Id. at 23.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 23-25.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently.  He can stand and walk four hours in an eight-hour workday with no restriction on sitting.  He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally operate food controls bilaterally, stoop, kneel, crouch, and crawl.  He can perform simple, routine tasks but not at a production rate pace with no more than occasional changes in the work setting.  He can have frequent interaction with supervisors and occasional interaction with coworkers and the public. (R. at 25).  The ALJ did not state an exertion level Plaintiff could perform but at step five the ALJ applied the sedentary work level (R. at 32).

13.     At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 30-31.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Since the ALJ found that

Plaintiff's ability to perform sedentary work was impeded by additional limitations, the ALJ posed hypotheticals of similar age, education, and work experience claimant with Plaintiff's RFC to the vocational expert.  The expert opined that this hypothetical claimant could perform such occupations as addresser, charge account clerk, document preparer, and callout operator, all sedentary jobs.  (R. at 31-32.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 32.)

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the Appeals Council rejected new evidence from his treating psychologist, Charles Fontana, Ph.D., of March 5, 2019 (Docket No. 8, Pl. Memo. at 9-16).  Plaintiff rejects the ALJ's conclusion that Plaintiff could have frequent contact with supervisors because it lacked support by substantial evidence (id. at 16-18).  Plaintiff claims the ALJ erroneously weighed medical opinion evidence (id. at 19-21).  Finally, Plaintiff contends that the vocational expert's opinion supports the conclusion that Plaintiff indeed is disabled (id. at 21-23).  For the reasons that follow, this Court accepts Plaintiff's first argument regarding the Appeals Council's consideration of post-hearing opinion evidence.

15.     Defendant contends that Plaintiff focuses his arguments on the mental assessments of his RFC, hence this case only addresses his mental health impairments (Docket No. 11, Def. Memo. at 2 n.1; cf. Docket No. 8, Pl. Memo. at 1 & n.1).  Plaintiff stated that, while focusing on his psychiatric issues, his "physical impairments combined with the psychiatric impairments preclude Plaintiff from engaging in substantial gainful activity on a regular and continuing basis" (Docket No. 8, Pl. Memo. at 1 n.1).

16.     Plaintiff first argues that the Appeals Council erred in rejecting the post-hearing opinion of Dr. Fontana (Docket No. 8, Pl. Memo. at 9-16), arguing that his March 5, 2019, opinion did relate to the relevant period before the October 10, 2018, ALJ proceeding (id. at 10-12).   There, Dr. Fontana concluded that Plaintiff's obsessive compulsive and hypomanic symptoms prevented him from effectively working with others without major stress to himself (R. at 10; Docket No. 8, Pl. Memo. at 8).   The Appeals Council, however, determined that Dr. Fontana's opinion did not relate to the prior period at issue and thus did not affect the ALJ's decision (R. at 2; cf. Docket No. 8, Pl. Memo. at 9-10).

17.     Plaintiff next contends that the Appeals Council failed to consider Dr. Fontana's opinion under the treating physician rule (Docket No. 8, Pl. Memo. at 12-16).   This also turns upon whether Dr. Fontana's opinion relates to the pre-hearing period at issue.

18.     As new evidence after the ALJ's hearing, Plaintiff bore the burden of showing that Dr. Fontana's opinion evidence was new, material, relates to the period on or before the hearing decision, and has a reasonable probability that it would change the outcome of the ALJ's decision, 20 C.F.R. §§ 404.970, 416.1470 (Docket No. 11, Def. Memo. at 12).

19.     Defendant counters that Dr. Fontana's letter related to a portion of the relevant period (treatment on June 22, 2018, months before the ALJ's November 2018 decision, R. at 10-11; Docket No. 11, Def. Memo. at 13), but that information was not new since the ALJ considered that June 22, 2018, evaluation (R. 27, 705; Docket No. 11, Def. Memo. at 13).   Defendant then argues that this evidence did not show a reasonable

probability that it would change the outcome here (id.) and the Appeals Council was not required to elaborate on why that evidence fails to change the result (id.).

20.     Plaintiff replies that Defendant cannot argue whether Dr. Fontana's letter was not new because the Appeals Council did not decide on that ground and the Defendant's argument is post hoc rationalization (Docket No. 12, Pl. Reply Memo. at 1) and alternatively he contends that Dr. Fontana's opinion was clearly new (id.). Presumably, the post hoc rationalization would also include Defendant's argument that this opinion evidence would not change the outcome.

21.     Defendant concedes that some of Dr. Fontana's opinion related to the relevant period.  The sole ground for the Appeals Council rejection of it was its timing. The Council did not consider alternatives that the opinion, if considered, was not novel or that it would not change the outcome of the case.  While either might be the case, it is for the Appeals Council (rather than Defendant on judicial review, see Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999); Docket No. 12, Pl. Reply Br. at 1) to find that Dr. Fontana's opinion was neither new nor would change the ultimate result if considered.

22.     Dr. Fontana's opinion considered the most recent contact with Plaintiff on February 18, 2019, noting that Plaintiff could not tolerate suggestions others gave him which kept Plaintiff from complying with therapy over the years Plaintiff struggled with mental illness (R. at 10).  This reflects a continuation of Plaintiff's condition following the ALJ's decision that relates to the period prior to the ALJ's decision.  This is in error.  The Appeals Council should have remanded to allow consideration of Dr. Fontana's opinion. Again, this Court does not determine at this point whether that opinion is completely new

(parts are, reflecting continuation of Plaintiff's mental condition) or whether the opinion changes the outcome of the disability determination.

23.    Thus, on this ground, Plaintiff's motion for judgment (Docket No. 8) is granted.

24.    Next, Plaintiff argues that there is no substantial evidence for the ALJ's finding that Plaintiff could have frequent contact with supervisors (Docket No. 8, Pl. Memo. at 16-18; cf. R. at 25).  Defendant relies upon the opinion of Dr. M. Momot Baker to support the ALJ's finding that Plaintiff could have frequent interaction with supervisors and the fact that his mental health examinations did not reveal any anger on Plaintiff's part (Docket No. 11, Def. Memo. at 16).

25.    With the remand to the Appeals Council (and potentially to the ALJ) to consider Dr. Fontana's opinion (and Plaintiff's inability to effectively work with others without stress to himself), the ALJ may reconsider how Plaintiff handles contact with supervisors despite the RFC findings that Plaintiff could have occasional interactions with coworkers and the public but more frequent interactions with supervisors.

26.    Plaintiff faults the ALJ in his assessment of the medical opinion evidence, namely by giving partial weight to the opinion of state agency psychologist Dr. Momot Baker (R. at 96-107, 108-19, 29).  Momot Baker assessed moderate limitation in interaction, concentration, and adaptation, thus limiting Plaintiff to moderate restrictions in work pace, interaction with the public, criticism from supervisors, and changes to work setting (R. at 105, 117, 29).  The ALJ gave it only partial weight because of Plaintiff's ability to work several jobs and complete all tasks at home and that his objective tests were mostly normal (R. at 29).

27.     Plaintiff now argues that Momot Baker's opinion only deserved very little or no weight because she never examined Plaintiff, never treated him, her opinion lacked support, her opinion was inconsistent with the rest of the medical opinion of record, and she did not review more recent treatment evidence (Docket No. 8, Pl. Memo. at 19).

28.     Both Plaintiff and the ALJ gave at most partial weight to Dr. Momot Baker's opinion, assessing it on different grounds.  The ALJ did not apply the factors Plaintiff now argues for rejection of that opinion.   Upon remand, the ALJ may reconsider the appropriate weight to be given to Dr. Momot Baker's assessment.

29.     The RFC stated that Plaintiff could have occasional interaction with the public (R. at 25).  The ALJ's hypothetical to the vocational expert did not specify how the hypothetical claimant with that RFC could interact with the public, whether in person or by telephone (Docket No. 8, Pl. Memo. at 21; R. at 88).  The expert asked whether the public contact limitation also included by telephone (R. at 88; Docket No. 8, Pl. Memo. at 21) and the ALJ responded by occasional by either telephone or in person (R. at 88).  The expert then identified no light level jobs and only one sedentary position, addresser with only 5,758 jobs nationally, that the hypothetical claimant could perform with the public contact limitation (R. at 87-88; Docket No. 8, Pl. Memo. at 21).

30.     Plaintiff now argues that this limited number of addresser jobs and the lack of other positions clearly precludes the Defendant's burden at Step Five to demonstrate jobs exist in significant number to preclude a disability finding (Docket No. 8. PL. Memo. at 21-22).

31.     As Defendant observes (Docket No. 11, Def. Memo. at 23), the ALJ factored in telephone as opposed to in person contact in reviewing the vocational expert's opinion

and qualified that one of the jobs identified, addresser, could be performed with limited telephone usage (R. at 32).

32.     Even if addresser were eliminated as a possible job a hypothetical claimant like Plaintiff could perform (because of the telephone or in person interaction or the number of jobs in the national economy, as Plaintiff also argues (Docket No. 8, Pl. Memo. at 22)), the vocational expert identified three other occupations (including document preparer) where the manner of public contact and the number of jobs nationally are not at issue.

33.     The ALJ on remand would reach Step Five dependent upon the RFC found. With the remand ordered here, the RFC might change and lead to a different result at subsequent steps of the analysis.

34.     Therefore, on the grounds of Appeals Council consideration of post-hearing evidence, Plaintiff's Motion for Judgment (Docket No. 8) is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No.11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        August 20, 2021
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge